IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STEPHANIE CRUMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-354-STE |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.     **PROCEDURAL BACKGROUND**

Ms. Crumb applied for disability benefits alleging an onset date of October 26, 2012. (TR. 162-166). The Social Security Administration (SSA) denied Plaintiff's application initially, but on reconsideration, the SSA found that Ms. Crumb had been disabled beginning January 7, 2014. (TR. 12). Ms. Crumb appealed the finding that her

disability had not started earlier, and an administrative hearing was held. (TR. 30-71). Following the hearing, an Administrative Law Judge (ALJ) issued a partially unfavorable decision. (TR. 12-24). The ALJ affirmed the findings on reconsideration—that Ms. Crumb was disabled beginning January 7, 2014, but not before. (TR. 12-24). Plaintiff appealed the decision regarding her onset date, alleging that she was disabled beginning October 26, 2012, but the Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.  THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 26, 2012, the alleged disability onset date. (TR. 14-15). At step two, the ALJ determined Ms. Crumb had eleven severe impairments. (TR. 15). Beginning October 26, 2012, Ms. Crumb suffered from severe diabetes mellitus, hypertension, reflex sympathetic dystrophy of the right lower extremity status post multiple surgeries, nonalcoholic steatohepatitis, inflammatory arthritis, degenerative disc disease, chronic pain syndrome, and obesity. (TR. 15). Beginning January 7, 2014, the ALJ found two additional severe impairments: major depressive disorder and anxiety disorder. (TR. 15) And beginning January 17, 2015, the ALJ found one more severe impairment—obstructive sleep apnea syndrome. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 15).

At step four, the ALJ found that Plaintiff was not capable of performing any past relevant work. (TR. 21). The ALJ further concluded that as of the onset date, Ms. Crumb retained the residual functional capacity (RFC) to:

> [L]ift and carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for at least 2 hours during an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but can have no contact with the general public.

(TR. 18).

Utilizing this RFC, the ALJ made additional findings at step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could have performed between October 26, 2012 and January 6, 2014. (TR. 67). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 68). The ALJ adopted the testimony of the VE and concluded that Ms. Crumb was not disabled between October 26, 2012 and January 6, 2014, based on her ability to perform the identified jobs. (TR. 23-24).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred: (1) in the consideration of her testimony regarding three work-related limitations, (2) in failing to consider a particular agency ruling when formulating the RFC, and (3) in evaluating the opinion of a consultative examiner.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR IN THE EVALUATION OF PLAINTIFF'S TESTIMONY

At the hearing, Ms. Crumb testified: (1) she used a cane to walk, (2) suffered from chronic diarrhea, and (3) needed to elevate her right leg 2-3 hours per day, 2-3 days per week due to leg pain and swelling. (TR. 42-43, 46-50, 54-57). According to Plaintiff, the ALJ erred in: (1) evaluating the credibility of Ms. Crumb's allegations and (2) failing to consider the effect of these impairments in formulating the RFC. (ECF No. 13:8-13). In her latter argument, Ms. Crumb rightfully recognizes that the ALJ could have failed to include the limitations because the ALJ deemed Plaintiff not credible. (ECF No. 13:8). However, as Plaintiff points out, the ALJ: (1) failed to explain whether he had initially deemed the testimony credible or not and (2) instead relied on boilerplate language in the credibility determination. (ECF No. 13:8-9).

### A. ALJ's Duty to Evaluate Credibility

The assessment of a claimant's RFC generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of . . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996). In performing a credibility analysis, the ALJ must consider various factors[1] and "set[ ] forth the specific evidence he relie[d] on in evaluating the claimant's credibility." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see Wilson*, 602 F.3d at 1144 (noting that the ALJ is required to closely and affirmatively link his credibility findings to substantial evidence in the record.)

The ALJ must give specific reasons for the credibility finding, and must be sufficiently specific regarding the weight given to the individual's statements and the reasons for that weight. SSR 96-7p, at *4. It is not sufficient to make a conclusory

---

[1] In *Wilson*, the Tenth Circuit Court of Appeals set forth a list of factors that should be considered in assessing the credibility of subjective complaints, including:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Wilson*, 602 F.3d at 1145 (internal quotation marks omitted); *see also* SSR 96-7p, 1996 WL 473186, at *3.

5

statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.*

### B. Plaintiff's Testimony

At the hearing, Plaintiff testified regarding diarrhea, use of a cane, and need to elevate her right leg. (TR. 42-50, 54-57). According to Ms. Crumb:

- She used a cane which had been recommended by a doctor, but even so, she did not walk much,

- Problems with her right ankle and leg rendered her unable to drive,

- Sitting for more than 15-20 minutes caused her right leg to hurt and she had to "have it propped up,"

- The maximum amount of time she could sit without discomfort was 30 minutes,

- If she stood in one position for longer than 15 minutes, her leg started to swell and her pain increased,

- Since October 2012, she has had to relieve her leg pain by elevating her feet 2-3 hours a day, 2-3 times per week, and

- She suffered from bouts of chronic diarrhea throughout the day, which required bathroom breaks of 15-20 minutes each.

(TR. 42-50, 54-57).

### C. Error in the Credibility Evaluation

At step two, the ALJ determined that Ms. Crumb suffered from severe impairments involving reflex sympathetic dystrophy of the right lower extremity status post multiple surgeries. (TR. 15). At step three, the ALJ discussed Ms. Crumb's hearing testimony regarding her diarrhea and use of a cane in connection with a finding that she suffered from "moderate" restrictions in activities of daily living. (TR. 16). Activities of daily living

6

are relevant to a credibility analysis. *See* SSR 97-7p at * 3. However, daily activities alone would not support the ALJ's finding that Ms. Crumb's testimony was not credible. *See Krauser v. Astrue*, 638 F.3d 1324, 1332-1333 (10th Cir. 2011) (discussing necessity of looking at claimant's actual activities and stating that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity") (internal quotation marks omitted); *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (finding that plaintiff's lifestyle consisting of limited and sporadic activities "does not contradict a claim of disabling pain" and ALJ's citation of such daily activities did not indicate substantial evidence refuting plaintiff's credibility or claims of pain); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (finding that an "ALJ may not rely on minimal daily activities as substantial evidence" to determine that a claimant's claims of disabling pain are not credible). Instead, at step four, the RFC determination required: (1) consideration of Plaintiff's symptoms and subjective allegations, and (2) specific credibility findings. *See supra*.

In evaluating Plaintiff's credibility, the ALJ discussed Ms. Crumb's history of objectively documented problems relating to her right lower extremity, including:

- Three injections in the right ankle,
- A diagnosis of peroneal tendinitis with calcific thickening of the tendon above her ankle joint,
- Surgery on her right ankle with an implantation in the peroneal muscle in April 2011,
- Following surgery, 18 months of pain in her ankle, which was then placed in an immobilizing cast,
- Post-removal of the cast, a diagnosis of "causalgia of the lower limb,"

- A diagnosis of superficial peroneal nerve neuritis which resulted in a steroid injection,

- Neuroplasty of the superficial peroneal nerve and a neurectomy on the sinus tarsi of her right ankle,

- Another steroid shot for pain,

- Two more surgeries on the peroneal nerve, findings that the surgeries were unsuccessful, and placement of a below the knee cast, and

- Reports of continued pain following the cast.

(TR. 19).

After considering the medical evidence, the ALJ stated that he found that the severe leg impairment "could reasonably be expected to cause the alleged symptoms." (TR. 20). As a result, the ALJ had a duty to evaluate whether he believed Ms. Crumb's statements regarding her pain and related limitations. *See* SSR 96-7p. In connection with her leg impairment, the ALJ discussed Ms. Crumb's relevant testimony:

> [Plaintiff] testified that her right lower extremity is the primary cause of her inability to work. She has to keep it elevated or else it will swell. She described difficulty sitting for longer than thirty minutes. She cannot stand longer than fifteen minutes due to increasing pain and increasing swelling in her leg. She cannot walk more than a few feet. She cannot lift more than ten pounds. She needs to stay reclined up to three hours a day with her leg elevated above her heart. Even after six surgeries, she described worsening pain as she has become more impaired over the years of treatment and surgeries.

(TR. 19).

Following the summary of Plaintiff's testimony, the ALJ stated: "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to January 7, 2014, for the reasons explained in this

8

decision." (TR. 20). The problem with the ALJ's credibility finding is that he never identified "the reasons explained in the decision." A clear conflict exists between the RFC which states that Plaintiff can sit for 6 hours during an eight-hour workday and can stand and walk for at least 2 hours during an eight-hour workday, and Ms. Crumb's testimony concerning her limitations in sitting, standing, and walking. *Compare* TR. 18 *with* TR. 42-50, 54-57. Based on the conflict, a reasonable conclusion would be that the ALJ had rejected Ms. Crumb's testimony as not credible. But the ALJ never states which portion of Plaintiff's testimony he deemed "not entirely credible." And in fact, the ALJ's rejection of an opinion from two state agency physicians would suggest that he had believed Plaintiff regarding her leg impairment.

> In evaluating the opinions of two state agency physicians, the ALJ stated:
>
> They opined that the claimant can do less than a full range of light work, such that she can only sit for six hours in an eight-hour workday, but had no other postural limits. I assign little weight to these opinions. These files did not fully consider the claimant's subjective complaints and they are contradicted by extensive medical evidence cited above. Based on all of the evidence currently available, including the claimant's testimony and treating physician's opinions, I find that the claimant is far more limited.

(TR. 20-21). Based on the ALJ's treatment of the state agency physicians' opinions, it appears as though the ALJ had credited some portion of Ms. Crumb's testimony concerning her leg impairment. But again, the ALJ failed to explain which portion of the testimony he deemed incredible and why, instead, relying on "boilerplate" language only. As stated, the ALJ must set forth the specific evidence he relied on in evaluating the claimant's credibility and affirmatively link his findings to substantial evidence in the record. *See supra*. The ALJ's failure to comply with these legal dictates warrants reversal.

9

As a result, the Court is unable to evaluate Plaintiff's argument regarding whether the RFC should have included limitations related to the cane, the diarrhea, and the leg impairment. That issue can only be determined on remand, following a proper adjudication of Plaintiff's testimony.

## VI. THE ALLEGED ERROR IN THE ALJ'S FAILURE TO DISCUSS AN AGENCY RULING

In the RFC, the ALJ concluded that Ms. Crumb retained the ability to perform less than "sedentary" work, as defined by 20 C.F.R. § 1567(a). *See* TR. 18. The SSA has promulgated a specific agency ruling which addresses the implications of an RFC for less than a full range of sedentary work. SSR 96-9p, 1996 WL 374185 (July 2, 1996). Plaintiff notes that the agency ruling states that "an RFC for less than a full range of sedentary work . . . is expected to be ***relatively rare***." (ECF No. 13:3) (emphasis in original) (citation omitted). According to Ms. Crumb, the ALJ erred in failing to discuss his consideration of the agency ruling and "why his particular very limiting RFC overcomes this rare presumption." (ECF No. 13:3).

Plaintiff cites no authority for his proposition that the ALJ is required to cite SSR 96-9p or otherwise perform a detailed analysis of the particular considerations in the ruling, simply because the ALJ has concluded that Plaintiff retained an RFC for less than "sedentary" work. However, at this stage, consideration of the issue is unnecessary and would be premature, considering that the RFC may change following reconsideration of Plaintiff's credibility.

## VII. NO ERROR IN THE EVALUATION OF A CONSULTATIVE EXAMINER'S OPINION

Consultative psychologist, Kara Rodgers, examined Plaintiff and diagnosed her with severe major depressive disorder, and anxiety disorder, NOS. (TR. 581-584). Dr. Rodgers also stated that Plaintiff:

- "seem[ed] to have some problems managing her irritability, which would possibly cause her to have problems getting along with others in a work environment" and

- "May have some difficulty with memory and concentration while performing work related tasks."

(TR. 582-583).[2] The ALJ assigned Dr. Rodgers' opinion "great weight," recognizing the psychologist's diagnoses and "a restriction on social interactions in the workplace" and stating: "The diagnoses fit the medical evidence and the hearing testimony. The effect on the residual functional capacity described by Dr. Rodgers has been incorporated herein." (TR. 21).

Plaintiff alleges that the ALJ "sanitize[d]" Dr. Rodgers' opinion and "understate[d]" Dr. Rodgers' true findings. (ECF No. 13:4). According to Ms. Crumb, the RFC which states that Plaintiff can "respond appropriately to supervisors, co-workers and usual work situations" lacks substantial evidence and conflicts with the findings from Dr. Rodgers. Plaintiff alleges that the ALJ improperly "cherry-pick[ed]" Dr. Rodgers to exclude relevant limitations in the RFC. (ECF No. 13:5-8). The Court rejects Plaintiff's arguments.

---

[2] Dr. Rodgers also stated that Plaintiff's depression "seem[ed] to deplete her motivation and drive, which could affect her work performance as well." (TR. 583). But this statement does not concern any specific work-related limitation, and thus will not be considered in evaluating Dr. Rodgers' opinions.

First, Plaintiff argues that the RFC lacked substantial evidence because:

- Plaintiff did not respond appropriately to her husband in front of Dr. Rodgers,
- Plaintiff did not respond appropriately to Dr. Rodgers' staff,
- Ms. Crumb appeared agitated during the interview,
- Plaintiff reported not sleeping well,
- Plaintiff reported that her family avoids her when she is irritable,
- Plaintiff reported that she worries and feels hopeless, and
- Plaintiff struggles with short-term memory.

(ECF No. 13:4-6). Aside from the struggles with short term-memory, Plaintiff's "evidence" consists of nothing more than opinions characterizing Plaintiff's behavior and Plaintiff's subjective reports to Dr. Rodgers. The RFC is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do *work-related activities*." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (July 2, 1996) at *3 (emphasis added). Thus, Plaintiff's "evidence" has no bearing on the RFC, aside from the struggles with memory problems, which were adequately accounted for when the ALJ limited Plaintiff to "simple, routine, and repetitive tasks." (TR. 18) *See Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), *infra*.

The Court likewise rejects Plaintiff's argument that the ALJ "cherry-picked" Dr. Rodgers' opinion. According to Ms. Crumb, "the ALJ does not distinguish the differences between his RFC and the functional limitations by Dr. Rodgers." (ECF No. 13:6). The Court concludes the RFC adequately reflected Dr. Rodgers' opinion, despite the lack of a verbatim recitation of the psychologist's opinion in the RFC.

As stated, Dr. Rodgers opined that Plaintiff:

- "seem[ed] to have some problems managing her irritability, which would possibly cause her to have problems getting along with others in a work environment" and

- "May have some difficulty with memory and concentration while performing work related tasks."

(TR. 582-583). In part, the RFC stated:

> The claimant can understand, remember and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but can have no contact with the general public.

(TR. 18). In *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), the Tenth Circuit Court of Appeals addressed similar circumstances and found no error when the RFC failed to reflect every limitation listed in a Mental Residual Functional Capacity Assessment Form. In *Smith*, a psychologist had found that the claimant suffered moderate limitations in her ability to:

- Remain attentive and keep concentration for extended periods and

- Get along with coworkers or peers without distractive them or engaging in behavioral extremes.

*Smith*, 821 F.3d 1268. The ALJ concluded that the claimant: (1) could engage in only simple, repetitive, and routine tasks and (2) could not engage in face-to-face contact with the public. *Id.* at 1269. The claimant challenged the RFC, alleging that the ALJ had failed to incorporate the specific limitations that had been found by the physician. *Id.* The Court rejected the claimant's argument, stating: "[The] administrative law judge[] incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities." *Id.*

13

The facts in *Smith* are nearly identical to the facts in the instant case. Like in *Smith*, Dr. Rodgers had concluded that Plaintiff suffered from difficulty with memory and concentration and could have problems in getting along with others in the work environment. (TR. 582-583). And like in *Smith*, the ALJ here accounted for these limitations by concluding that Ms. Crumb could: (1) understand, remember and carry out only simple, routine, and repetitive tasks and (2) could have no contact with the general public. (TR. 18). Based on *Smith*, the Court rejects Plaintiff's challenge regarding the ALJ's evaluation of Dr. Rodgers' opinion.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

ENTERED on November 14, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE